UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LIBERTARIAN PARTY OF CONNECTICUT ) <br> HAROLD HARRIS ) <br> DANIEL REALE ) <br> ) <br> v. ) <br> ) <br> DENISE MERRILL, SECRETARY OF STATE ) <br> NED LAMONT, GOVERNOR OF ) <br> CONNECTICUT ) <br> ) | CIVIL ACTION NO. <br> 3:20-CV-00467 (JCH) <br><br><br><br><br><br> May 11, 2020 |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS
PLAINTIFFS BY INDEPENDENT PARTY AND MICHAEL TELESCA**

The Independent Party (IP) is a minor party in Connecticut as defined by Conn. Gen. Stat. § 9-374.  *See generally Independent Party of CT – State Central v. Merrill*, 330 Conn. 689-90, 703-09 (2019) (describing recognition of statewide Independent Party after Ralph Nader received over 1% of the vote in a statewide election on the Independent Party line).  Michael Telesca is its chairman and a registered voter.  Presently there are four minor parties in Connecticut, meaning that a voter can register as a party member in any town in the state: Green Party, Independent Party, Libertarian Party, Working Families Party.  Conn. Secretary of the State, *Minor Parties in Connecticut* (available at https://portal.ct.gov/SOTS/Election-Services/Political-PartiesTown-Committe-Rules/Minor-Parties-in-Connecticut).

Although voters anywhere in the state can register as minor party members, minor parties cannot nominate candidates by convention for all offices as can the two major parties.  Rather, they can only nominate by convention for races in which a candidate of that minor party received at least 1% of the vote for that particular office in the prior election.  Conn. Gen. Stat. § 9-372(6).

1

So, after Ralph Nader received over 1% of the vote for president on the IP line in 2008, the IP was able to nominate by convention a candidate for that office in the next election cycle. However, when its candidate for president in 2012 failed to receive 1% of the vote, it lost the ability to nominate a candidate by convention.

The *only* other way for minor party candidates, including those of the four recognized statewide minor parties, to gain ballot access is by petitioning. Conn. Gen. Stat. § 9-453a to 9-453u. In summary, they must obtain valid in-person signatures of 1% of the number of persons voting for that office in the previous election. All four of the statewide minor parties wishing to nominate candidates for a particular office for which they did not have a candidate in the prior election, or which had a candidate who failed to obtain 1% of the vote, are affected identically by this law. There are obvious shortcomings of allowing minor parties to nominate for dozens of offices only by petitioning in light of the current health emergency. "Suffice it to say that, during the state of emergency, the traditional venues for signature collection are unavailable: few people are walking on public streets in town centers; malls are closed, as are all but essential businesses; restaurants provide only take-out food or delivery; public meetings, if held at all, are conducted virtually; and the vast majority of people are remaining at home." *Goldstein v. Secretary of the Commonwealth*, 484 Mass. 516, 526 (2020). To her credit, Secretary of the State Merrill recognized those shortcomings in a memorandum sent to various officials on March 28, 2020, and offered alternatives. However, six weeks later, so far as has been announced publicly there has not been a resolution that would allow the present nominating process to pass constitutional muster. While we remain hopeful that Governor Lamont will address by executive order the impossibility of traditional petitioning, if such an order is issued it remains to be seen if it would meet constitutional concerns. *See, e.g., Goldstein*, 484 Mass. at 517-18 (ordering under

state constitution 50% reduction in required signatures, extending deadlines, and allowing electronic signatures in light of pandemic).

The Libertarian Party raises challenges to Connecticut's petitioning laws for minor parties in Counts Two and Three of its complaint.[1] (The first count challenges various executive orders by Governor Lamont, and IP would not join in that challenge because, among other reasons, it did not have a state court case pending on certain issues.) The pending motion for temporary restraining order raises issues of the legal and practical inability to petition during the pending health emergency.[2] Any relief granted or denied to the Libertarian Party on the second and third counts will, of necessity, affect the Independent Party's ability to nominate candidates who can only be nominated by petitioning. While the Libertarian Party and the Independent Party have a common interest in encouraging and enabling wider ballot access for candidates, on election day they will be in competition with all the other political parties endorsing candidates for the finite pool of votes. Under these circumstances, IP is entitled to intervene in this proceeding as a matter of right, Fed. R. Civ. P. 24(a), but also should be allowed to intervene as a matter of the Court's discretion, Fed. R. Civ. P. 24(b).

---

[1] IP and Telesca would propose filing a separate complaint as soon as practicable, but the essence of the complaint would be that the process for most minor party nominations, namely petitioning, is unconstitutional under the first and fourteenth amendments to the U.S. Constitution, particularly in light of the global pandemic. While there are other broader issues, that is the most pressing and time-sensitive.

[2] There is a second election issue that will arise if any candidates at conventions for major parties fail to qualify for primaries and are left with petitioning as the sole means for ballot access when petitioning cannot be accomplished without violating orders issued in the health emergency. *See Campbell v. Bysiewicz*, 242 F. Supp. 2d 164 (D. Conn. 2003) (holding Connecticut ballot access laws unconstitutional where only way to qualify for primary was to obtain particular level of convention delegate support). Although it seems sensible to address that issue in a thoughtful, comprehensive manner rather than in a rush after the conventions, that issue is not directly presented in this case.

Rule 24(a) provides, with emphasis added: "On timely motion, the court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." As for permissive intervention, Rule 24(b) provides, with emphasis added: "[o]n timely motion, the court *may* permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." To be granted intervention as of right or by permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014).

A threshold question is the timelines of the motion to intervene. This factor is intended to consider the extent to which prejudice to the existing parties might arise from a delay if intervention is granted. *MasterCard Int'l Inc. v. Visa Int'l Service Ass'n*. 471 F.3d 377, 390 (2d Cir. 2006). This factor weighs heavily in favor of intervention because the Independent Party does not seek any alteration of the existing schedule in this case. We understand that supporting papers concerning the motion for preliminary injunctive relief are due May 15, 2020. We will comply with that deadline. In any event, this case was filed on April 4, 2020. No formal notice of the pendency of this case was provided either to other minor parties or, for that matter, to the major parties.

As to the other factors, IP must have a "direct, substantial, and legally protectable" interest to satisfy the interest requirement of Rule 24(a)(2). *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir. 1990). This factor is

construed more broadly in cases involving the public interest. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (court used liberal construction of Fed. R. Civ. P. 24 to allow intervention by ballot measure sponsor in suit regarding alleged unconstitutionality of that measure); *see also Prete v. Bradbury*, 438 F.3d 949, 953–956 (9th Cir. 2006) (public interest group that has supported ballot measure has significant protectable interest in defending legality of measure). IP has the same protected interest as the Libertarian Party; a first and fourteenth amendment interest right to associate. The right to associate includes the "right of citizens to create and develop new political parties." *Norman v. Reed*, 502 U.S. 279, 288 (1992); *see also Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 184 (1979). Telesca has a protected right to cast his votes effectively. *Williams v. Rhodes,* 393 U.S. 23, 30 (1968). "Both of these rights, of course, rank among our most precious freedoms." *Id*.

As to the requirement that a judgment in this case might impair or impede their ability to protect their first amendment interests, it is clear that the result in this case will lead the defendants to treat the IP the same as the Libertarian Party (and the other minor parties). *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) ("[t]he impairment requirement does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule").

Finally, IP and Telesca must make a "minimal" showing that the plaintiffs would not adequately represent their interests. *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 98 (2d Cir. 1990)*; see also Wolfsen Land & Cattle Co. v. Pacific Coast Fed'n of Fishermen's Ass'ns,* 695 F.3d 1310, 1315 (Fed. Cir. 2012) (burden of showing inadequacy is "minimal," requiring only showing that existing party's representation "may be" inadequate as to some aspect of case). While IP and the Libertarian Party have the

5

same interests in advancing their first amendment rights, the fact remains that they are in competition for a limited pool of votes in November. If plaintiffs obtain a remedy in this case, either by order or negotiation, it will affect IP and its ability to compete for that limited pool of votes. *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179–181 (2d Cir. 2001) (evidence of adversity of interest weighs in favor of mandatory intervention).

Permissive intervention should be allowed under Rule 24(b) even if the standard for mandatory intervention is not met. The principal consideration in ruling on a Rule 24(b) motion is whether intervention will cause unreasonable delay or unfairly prejudice adjudication of the original parties' rights. *Coffey v. Commissioner of Internal Revenue*, 663 F.3d 947, 951 (8th Cir. 2011). The Court has broad discretion under that rule. *See, e.g., Rosenshein v. Kleban*, 918 F. Supp. 98, 106 (S.D.N.Y. 1996) (district court possesses "broad discretion in resolving applications for permissive intervention"); *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 22 (E.D.N.Y. 1996) (district court's discretion under Fed. R. Civ. P. 24(b) is broad).

Again, delay is not a factor militating against intervention, and the plaintiffs have no objection to the motion being granted so they presumably do not perceive any unfair prejudice to their position. *League of Women Voters v. Johnson,* 902 F.3d 572, 578–579 (6th Cir. 2018) (district court abused its discretion in denying permissive intervention when case was in its infancy, given that any delay attributable to intervenors' presence would have been minimal).

                         THE PLAINTIFF,

                         By_____/s/_____
                         William M. Bloss
                         Koskoff, Koskoff & Bieder, P.C.
                         350 Fairfield Avenue
                         Bridgeport, CT 06604
                         Juris No. ct01008
                         TEL: 203-336-4421
                         Fax: 203-368-3244
                         Email: bbloss@koskoff.com

## **CERTIFICATION**

     This is to certify that on the 11th day of May, 2020, the foregoing document was served in accordance with the Federal Rules of Civil Procedure, and/or the District of Connecticut's Local Rules, and/or the District of Connecticut's rules on Electronic Service upon the following parties and participants:

Edward Bona
PO Box 13
Plainfield, CT 06374
(860) 889-5930
Edward-bona@comcast.net

Dan Reale
20 Dougherty Ave
Plainfield, CT 06374
(860) 377-8047
headlinecopy@gmail.com

Maura Murphy Osborne
Assistant Attorney General
Office of the Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06106
860-808-5020
Maura.murphyosborne@ct.gov

                         _____/s/_____
                            William M. Bloss