## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LIBERTARIAN PARTY OF CONNECTICUT ET AL., | CIVIL ACTION NO. 3:20-CV-00467 (JCH) |
| v. | |
| DENISE MERRILL, SECRETARY OF STATE NED LAMONT, GOVERNOR OF CONNECTICUT | May 18, 2020 |

### VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The intervening plaintiffs, Independent Party of Connecticut and Michael Telesca, a registered voter in the State of Connecticut, file this complaint against Denise Merrill, Secretary of the State, and Ned Lamont, Governor, in their official capacities (collectively Defendants).

### Summary of this Civil Action

1. Plaintiffs allege that Connecticut's statutory ballot access procedure for minor parties including the Independent Party of Connecticut, in combination with Governor Lamont's Executive Orders, directly and indirectly affecting their ability to qualify candidates for the November general election ballot, are a severe hardship on plaintiffs' associational rights and right to nominate and vote for candidates of their choice, which do not further a compelling state interest and are not narrowly tailored to further any such interests, in violation of the first and fourteenth amendments to the United States Constitution.

1

2. The Independent Party of Connecticut is one of four statewide minor parties in the state. It seeks to nominate candidates for federal, state and municipal offices to provide an alternative to the two major parties, and it has nominated candidates for President, U.S. Senate, Congress, Connecticut constitutional officers, General Assembly, and many municipal offices.

3. Voters in any town in the state can register to vote as Independent Party members. The Independent Party of Connecticut presently has about 30,000 registered voters statewide.

4. The Independent Party of Connecticut intends to nominate or endorse candidates to run for President, Congress, General Assembly, and municipal offices in the election scheduled for November 3, 2020.

5. Pursuant to Connecticut election law, minor party candidates can appear on the ballot in one of two ways: (1) they may be nominated by the minor party consistent with party rules where a candidate for the particular office sought received one percent or more of the vote for that office in the immediately preceding election, or (2) they may gather and file petition signatures from one percent of the voters in the district for that office, or 7500, whichever is lower. As a practical matter, for the 2020 election the only office for which 7500 signatures must be filed is for President.

6. Pursuant to Governor Lamont's Stay-home Order, and in light of a global pandemic, Connecticut residents are largely required to stay in their homes. All public gatherings are prohibited. Additionally, workers who are deemed essential and permitted to leave their homes, and anyone outside the home, must maintain a distance of six feet from other people and must wear masks when that is not possible.

7.      The Independent Party of Connecticut, its affiliated and endorsed candidates and Teleseca were planning and preparing to petition for ballot access for the November 2020 election for President, Congress, and other offices prior to the issuance of the Stay-home Order. Although petitioning may start as early as January, generally in Connecticut the Independent Party does not petition during the winter months, as petitioning is most effective in outdoor, open areas attended by larger groups of people, and door to door petitioning in the winter, particularly after dark when most people are home, is unproductive and unsafe.  Had the stay-at-home orders not been issued, candidates would have been able to gather sufficient signatures to qualify as they have many times in the past.

8.      Through the enforcement of Connecticut election law in conjunction with the Stay-home Order and other executive orders, the State has effectively precluded plaintiffs and other minor party candidates throughout the state from qualifying to have affiliated candidates' names on the November 3, 2020 ballot.

9.      Defendants' refusal to make reasonable changes to the election laws places minor party-affiliated candidates in the position of either having to break the law and cause electors to break the law by petitioning in person or forgo running for public office altogether.

10.     Plaintiffs seek prospective declaratory relief and injunctive relief as necessary to ensure placement of Independent Party of Connecticut-affiliated candidates on the ballot.

**The Parties, Jurisdiction, and Venue**

11.     Independent Party of Connecticut is a minor party as that term is defined in state law, formed to advance the interests of its supporters and members and to provide voters with an alternative to the two major parties.

12. Telesca is a registered voter in Connecticut and is chairman of the Independent Party of Connecticut.

13. Defendant Ned Lamont is the Governor of the State of Connecticut and has authority over the suspension and enforcement of relevant Connecticut election laws during a state of emergency. At all relevant times he was acting under color of state law.

14. Defendant Denise Merrill is the Connecticut Secretary of the State. Secretary Merrill is the State's chief elections official and has authority over the implementation of the election laws. At all relevant times she was acting under color of state law.

15. Venue is proper in this Court because all parties are citizens of the State of Connecticut. This Court has personal jurisdiction over the Defendants. This Court is a proper venue for this civil action under 28 U.S.C. 1391.

16. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because the claims arise under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

17. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

**General Allegations**

18. The Independent Party of Connecticut (IP) is a minor party in Connecticut as defined by Conn. Gen. Stat. § 9-374, affiliated with The Alliance Party, a national party.

19. Michael Telesca is its chairman and a registered voter.

20. Presently there are four minor parties in Connecticut, meaning that a voter can register as a party member in any town in the state: Green Party, Independent Party, Libertarian Party, Working Families Party.

21. Although voters anywhere in the state can *register* as minor party members, they cannot necessarily *vote* for candidates endorsed by minor parties. Minor parties cannot nominate candidates by convention for all offices as can the two major parties. Rather, they can only nominate by convention for races in which a candidate of that minor party received at least 1% of the vote for that particular office in the prior election. Conn. Gen. Stat. § 9-372(6).

22. In 2018, IP-endorsed candidates received over 1% of the statewide vote for governor, secretary of the state, attorney general, comptroller and treasurer, approximately 84 state House seats (out of 151) and 28 state Senate seats (out of 36) and for the 4th and 5th congressional districts. Accordingly, the party can endorse and nominate candidates for those General Assembly and Congressional seats for the 2020 by convention or caucus and will not need to petition consistent with its party rules. Conn. Gen. Stat. § 9-451.

23. The Independent Party of Connecticut rules were filed with the Secretary of the State in 2010. They allow for nominations by majority vote at conventions or caucuses. The Secretary of the State takes the position that in light of Conn. Gen. Stat. § 9-372(6), nominations by conventions of minor parties for any particular office are only effective when a candidate for that minor party received at least one percent of the vote for that office in the preceding election. If they are allowed to nominate by party rules, the nominations are to be filed with the Secretary of the State by September 2, 2020.

24. If they did not have a candidate for that office in the prior election, or if the candidate received less than one percent of the vote, then a minor party candidate can obtain ballot access only by petitioning.

25. Petitioning rules are found at Conn. Gen. Stat. §§ 9-453a to 9-453u. Separate petition forms are required for each office (except presidential electors and state offices as

5

defined in § 9-372, which are irrelevant to this case). In order to be placed on the ballot as a petitioning candidate, whether as a minor party candidate or anyone else, voters equaling one percent of the votes cast for that office at the preceding election, or 7500, whichever is less, must sign the petition. Conn. Gen. Stat. § 9-453d. For president, 7500 valid signatures are required. For representatives in Congress, from 2703 to 2892 are required. For state senate, 74 to 528 are required depending on the district.

26. Petition signers must include their name, residence and date of birth on the petition form for it to be considered valid. Conn. Gen. Stat. 9-453a. The petitions also must contain the following:

WARNING

IT IS A CRIME TO SIGN THIS PETITION

IN THE NAME OF ANOTHER PERSON

WITHOUT LEGAL AUTHORITY TO DO SO

AND YOU MAY NOT SIGN THIS PETITION

IF YOU ARE NOT AN ELECTOR.

27. Signatures must be submitted to the town clerks (or more often, registrars of voters, § 9-453*l*) in the town where the signers reside for certification. Conn. Gen. Stat. § 9-453i. This year, petitions for minor party candidates must be filed for certification by August 5, 2020.

28. Town clerks have two weeks to review the petitions, then must forward the petitions to the Secretary of the State. § 9-453n. The town clerk must certify each name individually and certify that the signer is eligible to vote in the involved election, and that the

date of birth of the signer on the petition matches the date of birth in voter records.  § 9-453k.

29. The Secretary of the State then examines the forms for compliance with § 9-453o. In the case of petitioning candidates who wish to run as endorsed candidates of existing minor parties, "the Secretary shall approve the petition only if it meets the signature requirement and if a statement endorsing such candidate is filed in the office of the Secretary by the chairman or secretary of such minor party not later than four o'clock p.m. on the sixty-second day before the election," § 9-453o(b), this year September 2, 2020.

30. The novel coronavirus pandemic has led to extraordinary disruptions in the lives of the citizens of Connecticut.

31. Gov. Lamont has issued a series of executive orders to address the pandemic's effect in Connecticut.  As summarized on the state's website, he has ordered:

> •   **"Gatherings**: All social and recreational gatherings of more than 5 people are prohibited. Religious, spiritual, and worship gatherings of more than 50 are prohibited. This remains in effect until May 20, unless otherwise modified."
>
> •   **"Face Coverings**: When in public and a six-foot distance is unavoidable, face coverings are required to be worn. This does not apply to anyone for whom doing so would be contrary to their health because of a medical condition. . . .
>
> •   **"Business operations**: The Governor signed an executive order directing Connecticut residents to "Stay Safe, Stay Home." It directs all nonessential businesses statewide to prohibit in-person functions. . . ."

32. Specifically, on March 20, 2020, Gov. Lamont issued Executive 7H in an effort to slow the spread of the virus.  That order closed all but essential businesses and directed people to stay at home for most reasons.  Gov. Lamont has further ordered "social distancing" and the wearing of masks when social distancing is not possible.

33. That order did not make an exception for candidates, their staffs, or volunteers.

34. On March 28, 2020, Secretary Merrill sent a memorandum to the governor and to legislative leaders advising that "we have an urgent need to adjust our method of allowing candidates to petition on to both the August primary election ballot and the November general election ballot."

35. That memorandum further stated "As you know, there are processes in Title 9 for candidates to gather petition signatures in order to appear on the ballot for the primary and for the general election. Both of those processes require, by law, direct person to person contact in order to collect the signatures, the signatures to be delivered to registrars or town clerks in town halls that are now largely closed, verification by local election workers who are currently largely working from home, delivery to my office, and tabulation by workers in my office who are also largely working from home. Given the nature of the coronavirus, both petitioning processes present an opportunity for the virus to spread and are not feasible on the timeline required by statute."

36. Secretary Merrill stated that her "recommendation is to eliminate any path to ballot access via a petition process by executive order," and to grant "automatic ballot access for all races in November to any third parties that already have statewide ballot access, currently the Green Party, the Independent Party, the Libertarian Party, and the Working Families Party."

37. She stated that her recommendation "would address the public health emergency and prevent petition gatherers from going door to door and potentially spreading coronavirus, while at the same time preserving Connecticut's democratic tradition of allowing challengers access to the primary and general election ballots."

38. There was no known public response to her memorandum until six weeks later, May 11, 2020.

39.  On May 11, 2020, Gov. Lamont issued Executive Order 7LL, finding "there exists a compelling interest in reducing the risk of transmission of COVID-19 among candidates seeking election, their supporters who are seeking to contact potential voters and the public at large."  The order further stated:

> **WHEREAS**, the process of qualifying for ballot access through in-person petitioning as required under Title 9 of the General Statutes is a basic and vital requirement of our state constitution and our election laws, the purpose of which is to ensure that voters have the opportunity to choose among viable candidates who have qualified for the ballot based on a minimum threshold of support, and to promote an election that is orderly, fair and transparent; and
>
> **WHEREAS,** the COVID-19 pandemic may make it more difficult for candidates to meet the existing statutory petitioning requirements because fewer people are going outside or to public places and some people may be less willing to have in-person interactions with candidates or their supporters; and
>
> **WHEREAS,** reducing the number of in-person interactions that might otherwise occur if no modifications were made to the existing petitioning statutes may help further reduce the potential transmission of COVID-19 during the ongoing public health emergency. . . .

40.  Executive Order 7LL made the following changes for the 2020 election cycle insofar as they concern minor parties:

- The number of petition signatures required for ballot placement under § 9-453d was reduced by thirty percent.

- The deadline for submitting signatures was extended by two days, in other words for purposes of the issues in this case from August 5, 2020, to August 7, 2020.

- A signature will be counted without acknowledgement by a circulator if it is mailed or delivered electronically to the candidate who then files the document with the town clerk.  If more than one signature is on a page, then the complete

formalities from Conn. Gen. Stat. § 9-453a to § 9-453o must be met including notarization (although remote notarization will be permitted).

41. Petitioning is a difficult, time-intensive process but Independent Party of Connecticut-affiliated candidates have often been able to qualify, from President to other statewide races to General Assembly seats. Petitioning allows for the petitioner to explain who the candidate is, the reason for petitioning, and allows voters to ask questions. This is particularly important because the petition form requires confidential personal information including the signer's date of birth, which raises privacy concerns among some voters.

42. Successful petitioning requires close contact with voters, most often handing them documents on a clipboard and a pen.

43. Petitioning is most successful in public places with large groups where petitioners can approach large numbers of people in the least time possible. Petitioning is rarely done in winter months because there are fewer outside public events, and going door-to-door after dark is not productive or safe.

44. Petitioning often is not allowed on private property like shopping malls, stores, sporting events, and restaurants.

45. The Independent Party of Connecticut generally uses volunteers to petition, although for President, Congress and statewide races sometimes the party or the candidates endorsed by the party have hired paid petitioners.

46. The governor's executive orders and other directions currently and for the foreseeable future will preclude traditional petitioning. Even if they did not preclude traditional petitioning, it will not be effective while wearing a mask, handing people petitions and pens, and not being able to approach within six feet.

47. The direct or indirect preclusion of traditional petitioning by Gov. Lamont's executive orders are a severe restriction on the associational rights of all minor parties including plaintiff IP.

48. Gathering petition signatures by mail, by email, or by social media in the time allowed and, in the amounts required and in the time allowed, simply will not be possible for Independent Party of Connecticut.

49. There is no experience with gathering signatures by any process other than in-person petitioning, and there is no set of procedures within campaigns available that could be implemented. Gathering petition signatures by anything other than the process with which plaintiffs are familiar would require significant advance planning and expense to even try to implement, which is not possible at this late date. This is a particular burden for the Independent Party of Connecticut, which does not have paid staff.

50. Direct mail or email solicitations would be prohibitively expensive for the Independent Party, even if there could be advance planning which is not possible now, would be far more burdensome than in-person petitioning, and would not likely be successful.

51. Independent Party of Connecticut does not have a presence on social media. It has a website but does not have an extensive email list. Obtaining the number of petition signatures needed under Executive Order 7LL by these means with inadequate time to plan, no known process, no software, no experience, and insufficient funds would not succeed.

52. These alternatives for ballot access within Executive Order 7LL also present a severe restriction on the associational rights of all minor parties including plaintiff IP.

53. Any state interests furthered by the ballot access restrictions as modified by Gov. Lamont's executive orders do not further compelling state interests and are not narrowly tailored to further compelling state interests.

54. The Independent Party of Connecticut and its supporters including Telesca will be further injured and will suffer irreparable harm to their voting, speech, and associational rights because they will not be able to vote for Independent Party of Connecticut-endorsed candidates if their names are not permitted to be on the ballot.

**COUNT** I - **VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS**
**(Connecticut petitioning requirements for minor parties are unconstitutional as applied)**

55. The preceding Paragraphs 1 - 54 are hereby incorporated by reference.

56. Considering the existence of an unprecedented viral pandemic and Governor Lamont's Stay-home Order, the application and enforcement of Conn. Gen. Stat. § 9-453d and Executive Order 7LL are unconstitutional as applied to plaintiffs because they are severe restrictions on plaintiffs' right to ballot access and are not narrowly tailored to further a compelling state interest.

57. Defendants' actions effectively prohibit Independent Party of Connecticut candidates from getting the required number of signatures, and in turn, prevent them from having their names placed on the November 3, 2020, ballot, which violates plaintiffs' freedom of speech and association, equal protection, and due process rights as guaranteed by the First and Fourteenth Amendments, and as enforced by 42 U.S.C. § 1983.

58. Defendants' enforcement of the statutory requirements as modified by Executive Order 7LL in conjunction with the Stay-home Order make it virtually impossible

for Independent Party of Connecticut-affiliated candidates to get their names on the ballot without violating the Stay-at-home Order. Under the circumstances, these requirements are burdensome, unreasonable, and are not narrowly tailored to meet any compelling or legitimate state interest.

59.     These violations immediately injure plaintiffs and will continue to injure them in the future in the absence of relief from this court.

**COUNT II - VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS (Conn. Gen. Stat. §§ 9-453a et seq, as modified by Executive Order 7LL are unconstitutional as applied to Telesca as a registered voter)**

60.     The preceding Paragraphs 1 - 59 are hereby incorporated by reference.

61.     Telesca is a registered voter. He has consistently voted in past general elections and has a constitutional right to effectively cast his vote.

62.     The unconstitutional exclusion of candidates endorsed by the Independent Party of Connecticut candidacy through the unconstitutional enforcement of the signature requirements deprives him of an effective choice at the ballot and prevents him from choosing among competing alternatives, is unreasonable, and fails to meet any compelling or legitimate state interest.

63.     Telesca is injured by these unconstitutional acts.

**Prayer for Relief**

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter a judgment in its favor and against Defendants and grant the following relief:

A.     Enter declaratory judgment holding that Conn. Gen. Stat. 9-453d and Executive Order 7LL are unconstitutional as applied to plaintiffs under the present circumstances;

B.      Enter a preliminary injunction, and permanent injunction, barring Defendants from enforcing unconstitutional signature requirements;

C.      Enter an order requiring Defendants to place the names of Independent Party-endorsed candidates on the ballot without petition signatures;

D.      Award attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.      Award such other relief as the Court deems just and proper.

THE PLAINTIFF,

By_____/s/_____  
William M. Bloss  
Koskoff, Koskoff & Bieder, P.C.  
350 Fairfield Avenue  
Bridgeport, CT 06604  
No. ct01008  
TEL: 203-336-4421  
Fax: 203-368-3244  
Email: bbloss@koskoff.com

## **VERIFICATION**

I have read the foregoing complaint and the factual statements in it are true to the best of my knowledge and belief.  Signed under penalties of perjury at Waterbury, Connecticut this 18th day of May, 2020.

_____

Michael Telesca

**CERTIFICATION**

       This is to certify that on the 18th day of May, 2020, the foregoing document was served in accordance with the Federal Rules of Civil Procedure, and/or the District of Connecticut's Local Rules, and/or the District of Connecticut's rules on Electronic Service upon the following parties and participants:

Edward Bona
PO Box 13
Plainfield, CT 06374
(860) 889-5930
Edward-bona@comcast.net

Dan Reale
20 Dougherty Ave
Plainfield, CT 06374
(860) 377-8047
headlinecopy@gmail.com

Kyle Kenley Kopike
1506 N. Grand Traverse
Flint, MI 48503

Alma Rose Nunley
Office of the Attorney General
165 Capitol Ave
Hartford, CT 06106
Alma.nunley@ct.gov

Maura Murphy Osborne
Assistant Attorney General
Office of the Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06106
860-808-5020
Maura.murphyosborne@ct.gov

                                                                              _____/s/_____
                                                                               William M. Bloss