UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

**LIBERTARIAN PARTY OF CONNECTICUT**           CA NO 3:20-cv-00467
**HAROLD HARRIS**
**DANIEL REALE**

**VS**

**DENISE MERRILL, SECRETARY OF STATE**
**NED LAMONT, GOVERNOR OF CONNECTICUT**

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF TEMPORARY INJUNCTION**

**I. Preliminary Statement**

This memorandum and its allied exhibits serves to provide additional factual background not apparent on the record to address both the Defendants' arguments and Executive Order 7ll.

**II. Executive Order 7LL and the State of the Record and the Facts to the Present**

This memorandum follows the Defendants' continued efforts to perpetually reinvent all sorts and types of statutory schemes without any adequate notice, any proper authority or any functional ability to adjust. Indeed, as the record will reflect, not even the Defendants are capable of compliance.

Contrary to Defendant Merrill's admonition that Defendant Lamont simply should allow the Libertarian Party on the ballot without requiring any signatures, he took a course of action previously unknown to any logic, law or common sense by er

1

reinventing it with Executive Order 7LL (Exhibit A). It purports to reduce signature requirements by 30% (which is contrary to experience, see Exhibit F, Harris' Declaration). It offers the ability to transact through mail, but does not implement anywhere the Mailbox Rule.[1] "Any petition submitted in accordance with subdivisions (i) or (ii) of this subsection shall contain the information required under sections 9-453a, 9-453f and 9-453g of the General Statutes and shall include a statement by the registered voter attesting to his or her identity, and qualification as an elector and shall be signed under the penalties of false statement.If more than one signature is on a petition page, all the requirements of 9-453a to 9-453o of the General Statutes must be satisfied, provided that any existing Executive Orders governing remote notarizations may be utilized. Nothing in this Order shall preclude petitioning by any other means set forth in section 9-453a to 9-453o of the General Statutes." It does not change the requirement for party designation forms. It does not change the process for actual issuance of the petition. It does not change the requirements regarding withdrawn signatures under §9-453h.[2] The instructions issued by

---

1 That a document is deemed file as of the time it is postmarked by the United States Postal Service.

2 "Any signer of a nominating petition may withdraw his signature therefrom at any time up to the deadline date for filing nominating petition pages pursuant to section 9-453i, prior to the election, by sending a written notice of such withdrawal to the candidate or candidates named in such petition and by sending a copy of such notice to the Secretary of the State by such day. Such written notice and the copy thereof shall be sent by registered or certified mail."

Defedant Merrill are identical to those before, including the requirement to reserve the Party Designation prior to pulling petitions where candidates have not yet run in a given race or district (Exhibit B). The Party Reservation form and requirements are identical and still require in-person signatures (Exhibit C). The instructions for the November 3, 2020 election are identical. (Exhibit D). It is still required that, "Each nominating petition page must be submitted either to the Secretary of the State, or to the town clerk of the town in which the signers of the page reside, not later than ***4:00 p.m. Wednesday, August 5, 2020***. The town clerk or assistant town clerk in each town in which the election is to be held must be in their office between 1:00 p.m. and 4:00 p.m. on this deadline day to accept petition pages. The town clerk must give a receipt to the person submitting petition pages, indicating the number of pages submitted and the date upon which they were submitted." Id. Still, "Any signer of a nominating petition page may withdraw his signature at any time up to ***Wednesday, August 5, 2020*** by sending written notice by registered or certified mail to the candidate(s) named in the petition and a copy of such notice by registered or certified mail to the Secretary of the State." Id. Guidance from Defendant Denise Merrill references electronic signatures, but nowhere in 7LL does it specifically authorize electronic signatures (Exhibt E) – only a photograph or scan of actual signatures - "which signature may be scanned or photographed electronically" very clearly denotes an image of an actual signature (See EO 7LL), meaning actual paper must be produced. The guidance provides for further oddities entirely

uncontemplated by what the General Assembly passed and by what Defendant Lamont ordered by stating, "Petitions may be circulated by social media websites such as Facebook, Twitter or other such social media services." - which is nowhere in either. (Exhibit E) This does not at all take into account facts easily taken under judicial notice relating to social media in that Facebook posts, tweets and the like are shared – meaning that, by definition, there are multiple circulators per given signature.

The Defendants also fail to take into account the obvious and none of their submissions comment on it – the actual process of running a ballot drive itself. Both the Verified Complaint in this matter and the filings in support of the Plaintiffs' application for temporary injunction describe the immense amount of resources and impracticalities both both: (1) conducting such a drive; and (2) then actually trying to wage an effective campaign for public office, both of which are mutually exclusive due to the cumulative barriers. None of the Defendants' submissions meaningfully comments on the barrier to newly created town level organizations even being able to file the paperwork to raise or spend over $1,000 to actually get candidates elected, nor of the financial burdens imposed by campaign finance reporting compliance.

Plaintiff Harold Harris's situation indicated enhanced burdens through delay alone. For example, he submitted both his SEEC filings and application for nominating petition April 15, 2020 – under the impression that a solution may be

arrived at absent this Court's ruling (Exhibit F, Declaration of Harrold Harris).  He did not actually receive his application back from the Town Clerk (who had to verify he was an elector) until April 25, 2020. Id. Harris then had to transmit it to the Defendant's office so a form may be issued. It bears a date of April 29, 2020, but the actual postmark was for May 8, 2020, and it did not arrive until May 11, 2020. Id. It still required the full amount of signatures – 429. Id. The total round trip of a petition application, of which Plaintiff Harris' is a representative sample, is one month. Id.

Still, and this cannot be emphasized enough, no actual signatures have come back from either of the Defendants when counsel transmitted the Verified Complaint to them by certified, priority mail. In fact, it took until May 19, 2020 for Defendant Merril's card to return, unsigned (Exhibit G). Executive Order 7LL still employs, at its center, active use of the mail with all its inherent delays, and as State policy would have and assert, risks of signing actual documents. Those delays are substantial given the extra volume of mail due to compliance requirements under the Executive Orders forcing most business to be conducted remotely.

The State also fails to take into account not only these delays, but the added burden and infrastructure the new system would require. Plaintiff Reale's declaration sets forth, in detail, that: (1) a ballot drive by mail is impossible and far more costly than using paid circulators; (2) the party does not have the IT infrastructure to support online circulation as Defendant Merrill purports to be allowed under 7LL; (3) 7LL does not take into account the fact that the Party is prejudiced by not having all

5

those who would associate with it in the voter database; and (4) that 7LL is impossible to comply with. (Declaration of Plaintiff Reale, Exhibit H). It is further evident that 7LL does not appear, at all, to mention electronic circulation of petitioning or how at all that can be accomplished through social media while attending to the withdrawal procedures under §9-453h. Id. This new process will obviously require not only paper, but likely far more paper than a normal ballot drive. Id.

In the spirit of *the Defendants continuing to treat the Plaintiffs differently than Democrats and Republicans in contravention to the Fourteenth Amendment*, they publicly list 7LL's description as, "Modifications to the petitioning process for the August primary" at https://portal.ct.gov/Coronavirus/Pages/Emergency-Orders-issued-by-the-Governor-and-State-Agencies, which specifically implies that the rights of the Plaintiffs either do not matter to the Defendants or they simply did not intend 7LL to apply to them, at all.

Necessary information not already apparent will be set forth as required.

### III. The Claims of the Defendants are Simply without Merit for Lack of A Factual or Legal Basis

A. <u>The Defendants' Claim that Executive Order 7ll Provides an "Easy" Scheme is False</u>

*(1) The Scheme is Impossibly Difficult*

The Defendants' argument is premised not by stating what 7LL actually says, but selling it to the Parties and this Court as what it is not. The Governor proclaimed, quite publicly, his authority to author brand new law. That requires this Court to adopt the modes and methodologies of statutory interpretation.

Contrary to the State's sales pitch, 7LL does not allow electronic signatures. It allows two types of circulation: "...i) a registered voter signs a petition containing only his or her signature that is returned by U.S. mail to the candidate and later to the town clerkof the municipality or the Secretary of the State by the applicable deadline, or (ii) a registered voter signs a petition containing only his or her signature, which signature may be scanned or photographed electronically, and returned to the candidate byelectronic mail and later to the town clerk of the municipality or the Secretary of the State..." 7LL does not use the words "social media" anywhere. It does not even allow for electronic signatures, but physical signatures "which... may be scanned or photographed electronically". The black letter language still requires physical paper to exist, somewhere. Doing it piecemeal (as the case would be) wouldn't just require paper to be shipped in individual sheets – it would require large reams shipped via

DHL, UPS or FedEx due to exceeding postal weight limits. It requires, in violation of Executive Order 7N, many individuals in the same room stuffing envelopes to make such a ballot drive happen on short notice – short notice made all the more shorter based on the State's numerous attempts to delay resolution of the Plaintiffs' issues pending all the way back to last year.  This will easily require well more than ten people in the same room on a routine basis.

Simply put, as soon as someone challenges the pretended ability to do this through social media with electronic signatures, the Plaintiffs are off the ballot – and per usual, without any adequate time to seek court remedy or any due process as the Uniform Administrative Procedure Act would require. 7LL clearly does not allow any sort of social media circulation. It requires, "...a copy of the email demonstrating the electronic transmission of the petition by the registered voter..."

General Statutes §9-453a also provides for indigent candidates, stating, "If the person is requesting the form on behalf of an indigent candidate or a group of indigent candidates listed on the same nominating petition, the secretary shall give the person the number of original pages that he requests or the number which the secretary deems sufficient.", which leads to the natural question of who is paying for the IT infrastructure, bandwith and storage for indigent candidates to comply with this process. 7LL makes no mention of this, just like it makes no mention of blind electors wishing to sign as §9-6b contemplates.

The Defendants also cannot show nor have they even proffered any evidence or proof to show how "easy" this process is. They can't. No one has ever attempted this process ever before. It requires far more paper based on the black letter language of 7LL, more bandwith, more IT infrastructure and the Herculean effort required for validation, checking and tracking. If anyone had the capital to implement a statewide efforts of all Congressional Districts and other down ticket drives, petitions would still be arriving and unopened long after November 3, 2020 came and went.

If Defendant Merrill's office cannot even sign or promptly return a signature on even one piece of registered priority mail, how is her office going to process all of this paper?

Not even Rube Goldberg could have conceived of such a process in his day.

### (2) The Scheme Does not Comply with Norms of Due Process in this State or Federally

The State does not answer how existing due process issues complained of in the underlying State Action (Misbach v Merrill) relating to the Uniform Administrative Procedure Act and being excluded from the voter registration forms will function under the new Executive Order 7LL paradigm. The record and the evidence before this Court affirmatively answer that it *won't ever* function. In fact, the State has capitalized on that denial of due process by excluding the Plaintiffs from the ballot by locking them out of court in a manner that would have timely addressed those issues.

This memorandum and its exhibits in support arrive on a briefing schedule

when the vast majority of the petitioning season has passed. The Defendants' independent counts of how 7LL works do not match, which is unsurprising as the desires of one to settle and the other's desire to fight this case out to the end did not match. Any petition for a declaratory ruling under General Statutes §4-176 could not be meaningfully heard, nor would any opportunity exist to provide adequate notice – nor would it make any sense with each of the Defendant's written positions not just at odds with each other prior to briefing, but even so with implemenation of 7LL itself. Resolving a contested case under §4-177 would be equally problematic for the same reasons. How such a contested case or declaratory ruling could even be appealed to the Superior Court under §4-183 or further appellate review beyond that point is even less clear, especially because of what Defendant Lamont has done, by order, to the functionality of all State Courts.

The manner in which the State has delayed the resolution of the Plaintiffs' claims since September in conjunction with the manner they have handled it tells the people of this State that the intent is to keep reshuffling the deck until the Plaintiffs give up or run out of time.

The minimum standard of due process in this form, the Uniform Administrative Procedure Act, cannot function under the Executive Orders. By extension, nor can 7LL. What the State has done is, essentially, shift by executive order State Court disputes into this court by by repudiating all notions of fair play or due process.

### *(3) The Scheme is Actually Illegal*

7LL, like all these orders, find their genesis in the March 10, 2020 emergency declaration signed by Defendant Lamont. This triggered §28-9, which begins with, "In the event of serious disaster, enemy attack, sabotage or other hostile action or in the event of the imminence thereof...", connotating a hostile action. The authority upon which the Defendant relies is that in §28-9(b)(1), which states, "Following the Governor's proclamation of a civil preparedness emergency pursuant to subsection (a) of this section or declaration of a public health emergency pursuant to section 19a-131a, the Governor may modify or suspend in whole or in part, by order as hereinafter provided, any statute, regulation or requirement or part thereof whenever the Governor finds such statute, regulation or requirement, or part thereof, is in conflict with the efficient and expeditious execution of civil preparedness functions or the protection of the public health..."

The Defendant obviously found the signature requirement itself to be in conflict with civil preparedness and the protection of public health. Any amount of arbitrary make-work in any kind of crisis or in any time of limited resources would be. However, there is nothing efficient or expeditious about requiring the Plaintiffs to amass entire reams of paper, assembly in the necessary groups greater than five to package and track it, and then handle all this paper. This obviously requires much in person activity – as it would require much more in person activity on the part of the government's own employees and town clerks, who would need extra staff to download, check and

validate the signatures. The Defendant also ignores the requirement of the Town Clerks themselves to physically tally or issue reciepts for the pages as contemplated by §9-453l. The Defendant did not account for the requirement that physical pages actually exist so that their own certifications may be placed thereon as contemplated by §9-453n. There is nothing coherent or logical about 7LL, at all – especially taken in conjunction with Defendant Merrill's implementation of it. "...The Governor shall specify in such order the reason or reasons therefor and any statute, regulation or requirement or part thereof to be modified or suspended and the period, not exceeding six months unless sooner revoked, during which such order shall be enforced...", under §28-9(b)(1), but he doesn't do that in 7LL, nor does he attend to the requirements down range in §§9-453l and 9-453n when these physical (not virtual, as Defendant Merrill purports) pages arrive in the hands of town clerks or of the time frames he unilaterally moves by executive order.

      Above all, nothing in either 7LL or in Merrill's radically different interpretation of it changes §9-453a's requirement that, "Each petition for nomination for elective office shall be on a form prescribed and provided by the Secretary of the State."

      Labelling this disjointed, incomplete, poorly conceived and chaotic process anything that would "promote an election that is orderly, fair and transparent" as 7LL purports to do does not make it so. What this Executive Order does do, along with Defendant Merrill's interpretation of it, is sow confusion. Following that interpretation of the order wouldn't lead to pages or signatures being rejected – it would lead to them

not being counted at all.

This comes after two plus months of Defendant Ned Lamont having criminalized, by decree, the necessary political gatherings to raise funds or make ballot drives (or any other meaningful political speech) even possible.

### B. The Defendants' Claim that Executive Order 7LL Decreases Burdens is False – it Substitutes the Existing Scheme with Enhanced Burdens

Without belaboring the earlier points, this argument on the part of the Defendants also fails to demonstrate any legal or factual merit. The sheer burden of paper puts the Plaintiffs and those working for them out there anyway for even more of the same period of time. The only difference between 7LL and the existing scheme the Plaintiffs filed suit concerning in State Court (with different causes of action prior to being unlawfully barred from State Court) is the amount of paper – under 7LL there being many more sheets of it.

### C. The Claim that §9-453d Does not Create an Undue Burden During COVID-19 and the Executive Orders in Response is False – in fact, the Defendants have Capitalized on that throughout these proceedings and state court proceedings

The Defendants purposefully ignore Count One. The Plaintiffs were expeditiously pushing forward seeking to have *Misbach v Merrill* addressed since September of last year in State Court. Defendant Lamont closed the doors of that court by both issuing his orders (7G, among them) and by the resulting confusion his order foreseeably would have led to. The Defendants capitalized on that, refused any

13

meaningful communications on how to resolve the differences among the Parties, and thus forced the matter into this Court. The Defendants, in doing so, cost the Plaintiffs valuable time and opportunity to have their claims decided early on and in a meaningful manner. The Defendants had the ability to simply change the voter registration forms to include their designation, and they had the ability (and in the case of Merrill, the actual willingess) to simply allow them on to the ballot.

The Defendants not only shamelessly deprived the Plaintiff of their due process and their day in court – they sought to delay these proceedings as well.

It is not just an unconstitutional framework that treats the Plaintiffs unfairly and differently than Democrats and Republicans. It is not just the COVID-19 burdens from how it affects vulnerable populations and how the executive orders in response criminalize free speech and restrict movement. It is not just how Defendant Lamont has closed the courts of this state to the Plaintiffs, who may have redress for injuries done upon them.

It is all of the above.

D. <u>The Claim that the Plaintiffs Have Failed to Put forward an Adequate Facial Challenge to CGS §4-953d is a Red Herring, and the Claim is Interposed for Delay and Obfuscation of the Merits of This Case</u>

A simple statement of the nature of the complaint demonstrates this claim by the Defendants to be a red herring. Simply put, the Parties would not be in this Court had the Defendants not rigged the game by shuttering the state courts. That issue is addressed in Count One.

Count Two concerns COVID-19 and the impossibility of petitioning given the orders issued by Defendant Lamont himself, in addition to the burden petitioning places on elderly or vulnerable candidates, volunteers and circulators.

Count Three involves how the Defendants have purposefully utilized the situation to further enshrine and further reinforce the political monopoly of Democrats and Republicans. "Notice" filed by counsel for the Defendants, a letter from the Democratic and Republican Leaders in the General Assembly, is naked and shameless evidence of that very objective.

Simply put, the facial challenge was ready for a preliminary heairng on March 16, 2020. They intended to take testimony and proceed. The State was going to lose, so the State took action, and then purposefully adopted wilful inaction. The State's response to being called out on a rigged game was to rig the game even further.

The Plaintiffs had two out of state witnesses in addition to a wealth of evidence and testimony to more than mount that facial challenge and in fact prove that even Democrats and Republicans, were they similarly situated, could not possibly navigate the very ballot access obstacle course from where the Plaintiffs now stand – even retaining their existing funds and help to do it *before* COVID-19. This case concerns being forced to do it *during* COVID-19 and the Executive Orders that followed.

**IV. Conclusion**

It is unmistakeably clear that the State has no meritorious case for what it has not only done to the Plaintiffs, but also for what it has not done to accomodate them.

Democrats and Republicans don't have to worry about access to the ballot, at all. They are listed on the voter registration forms – someone need only check a box. Their party functions are paid for by government funds. They have absentee ballots to attend to official party business, on demand only for the asking. Libertarians bear the entire cost and burden of their party business, and must routinely leave home, even during a time where it has been rendered illegal to do so in the necessary manner to affect political change and peaceably assemble. They don't have a simple box to check on the voter registration forms so that all who wish to associate with them may – and be counted in a single database the Plaintiffs would use to find them.

This case involves a simple matter – Democrats and Republicans using a crisis to shore up a ballot access monopoly and fend off any court challenges to it.  The evidence and the record show that monploly hard at work defending a status quo under which the Plaintiffs continue to suffer cumulative and exponentially irreperable harm for which no other adequate remedy at law exists.

Dated this 1st Day of June, at Plainfield

THE PLAINTIFFS:
LIBERTARIAN PARTY OF CONNECTICUT        DANIEL REALE
HAROLD HARRIS


/s/ Edward Bona                          /s/ Dan Reale
Edward Bona                              Daniel Reale
PO Box 13                                20 Dougherty Ave
Plainfield, CT 06374                     Plainfield, CT 06374
(860) 889-5930                           (860) 377-8047
edward-bona@comcast.net                  headlinecopy@gmail.com


16

CERTIFICATE OF SERVICE

      We hereby certify that a copy of the foregoing and its exhibits in support were transmitted, via ECF to counsel for the Defendants Maura Murphy Osborne via Maura.MurphyOsborne@ct.gov, Alma Nunley via Alma.Nunley@ct.gov and Bill Bloss via BBloss@koskoff.com upon its filing via PACER's ECF system.

      A copy of the foregoing was also transmitted via first class mail, postage prepaid, to:

Kyle Kenley Kopitke
1506N. Grand Traverse
Flint, MI 48503

/s/ Edward Bona                                         /s/ Dan Reale
Edward Bona                                             Daniel Reale